UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cr-00206-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) ) | |
| Vs. | ) ) | ORDER |
| **ELISEO MARTINEZ LOPEZ,** | ) ) | |
| Defendant(s). | ) ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss Pursuant to 8 U.S.C. § 1326(d). After initial briefs were filed, the court heard oral arguments on January 26, 2015, and allowed post-hearing briefing. Having considered all of the arguments of counsel, the court enters the following findings, conclusion, and Order denying the Motion to Dismiss.

I.

Defendant is charged with unlawful reentry into the United States after removal subsequent to commission of an aggravated felony, all in violation of 8 U.S.C. § 1326(a) and (b)(2). See Indictment (#1). At the time a permanent resident alien, defendant was removed in 2007 to Mexico as an aggravated felon based on a conviction in the North Carolina General Court of Justice for Discharging a Weapon Into Occupied Property, a violation of §14-34.1(A) of the North Carolina General Statutes. In moving to dismiss, defendant contends that the removal on which this action is founded was invalid because, in waiving a hearing before an immigration judge ("IJ") in 2007, he was denied due process, preventing him from contesting the Attorney General's basis for his removal, the state conviction which the United States Immigration and Customs Enforcement (hereinafter "ICE") determined qualified him as an aggravated felon.

1

II.

For purposes of considering the Motion to Dismiss, the following facts appear to be undisputed. Prior to removal, defendant was a permanent resident alien, having emigrated from Mexico to the United States with his family as a young child. On November 9, 2005, the defendant was convicted in the North Carolina General Court of Justice, Superior Court Division for Mecklenburg County, of "Discharging a Weapon in Occupied Property," a violation of Chapter 14-34.1(A) of the North Carolina General Statutes. Defendant was sentenced to 25-39 months of imprisonment. See Govt. Ex. 2 (#16-2).

After such conviction, United States Immigrations and Customs Enforcement ("ICE") commenced proceedings to remove defendant as an aggravated felon. After receiving a Notice to Appear for removal proceedings in October 2007, defendant signed a "Statement Made for the Issuance of a Final Removal Order" (hereinafter "waiver"). See Govt. Ex. 4 (#16-4).[1] In pertinent part, such waiver provided, as follows:

> 3. I understand that I have the right to hearing before a immigration judge in which hearing I have the right to be represented, the opportunity to examine and object to the evidence presented against me, to present witnesses in my own behalf, to cross-examine witnesses presented by the government, object to evidence presented by the government including my own written statements, to present my own evidence, have all matters on the record recorded verbatim, and that the government be required to prove that I am removable from the Unites States. I understand that it I had a hearing in front of a judge, he would consider if there was any relief from removal available to me. Additionally, I understand that I have a right to appeal. Knowing all the above, I hereby waive those rights and request that my removal proceedings be conducted solely by way of written record without a hearing.

Id. (error in the original). After receiving such waiver, an immigration judge (hereinafter "IJ") issued his "Decision and Order" on November 8, 2007, finding that such waiver was knowing,

---

[1] Defendant averred that he did not recognize his signature on the removal documents. The court cannot conclude that such equivocal averment is a serious challenge to the authenticity of the documents or his signature as counsel did not pursue such argument at the hearing or in subsequent filings.

voluntary, and intelligent, and further concluding that the allegations of the charging document were true based on defendant's waiver.[2]  Based on those findings, the IJ directed that defendant be removed from the United States.  IJ Order, Govt. Ex. 5 (#16-5).

Defendant thereafter signed and/or acknowledged receipt of the Warrant of Removal/Deportation, which based his removal on his status as an aggravated felon.  Defendant was then advised in the "Warning to Alien Removed or Deported" that he could not re-enter or be found in the United States at any time after deportation because he had been found inadmissible under section 237 of the Immigration and Naturalization Act due to having been convicted of an aggravated felony.  Govt. Ex. 6 (#16-6).  He was further advised that before any return he was required to seek permission to reapply for admission by contacting the United States Consulate or United States Department of Homeland Security.  Id.  Defendant acknowledged receiving such advice by placing his signature on the bottom of the form.  Id.

Defendant was then removed from the United States, but, according to the Indictment, returned to the United States without first seeking or receiving permission from the Attorney General.  Based on such return, the Grand Jury charged defendant with unlawful re-entry under 8 U.S.C. 1326(a).

III.

Defendant moves to dismiss the indictment under Rule 12(b), Federal Rules of Criminal Procedure, based on an alleged defect in his removal, which is a collateral attack on the administrative proceedings which occurred before the Attorney General.  As such, this court's inquiry is limited by 8 U.S.C. § 1326(d).

---

[2]  Defendant also challenges the lack of a counter-signature by an agent of the government on such waiver. While the statute does require a government signature, the lack of a government signature does not appear to be within the scope of errors subject to collateral review under Section 1326(d).

3

A district court may dismiss an indictment under Rule 12 "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." United States v. Snipes, 611 F.3d 855, 866 (11th Cir.2010) (citation and internal quotation marks omitted). Rule 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed.R.Crim.P. 12(b)(2). As the Court of Appeals for the Fourth Circuit has noted, "a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." United States v. Weaver, 659 F.3d 353, 355 (4th Cir. 2011). As there are no material issues of fact in dispute, the court will consider the Motion to Dismiss based on the arguments of the parties.

To succeed on a Rule 12(b) motion which challenges an Order of removal, defendant has the burden under the Immigration and Nationality Act of showing the following:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

18 U.S.C. § 1326(d). Because the requirements of Section 1326(d) are written in the conjunctive, defendant must prove all three subparts in order to be entitled to relief. United States v. El-Shami, 434 F.3d 659, 663 (4th Cir. 2005).

IV.

The government argues that defendant's Motion to Dismiss fails from the outset because he cannot show that he has exhausted any administrative remedies. 8 U.S.C. § 1326(d)(1). While a defendant's "failure to exhaust administrative remedies will bar collateral attack on the

order in a subsequent illegal reentry prosecution under § 1326(d)," United States v. Cerna, 603 F.3d 32, 38 (2d Cir. 2010), the Court of Appeals for the Fourth Circuit in an unpublished decision held that "[c]ourts have generally held that "the exhaustion requirement [of § 1326(d)(1) ] must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." United States v. Ortiz, 488 Fed.App'x. 717, 718, 2012 WL 2926207, *1 (4th Cir. July 19, 2012). While Ortiz is not binding on this court because it is unpublished, it is instructive and as such, the court finds it prudent to consider whether exhaustion has been excused through an invalid waiver.

A.

Fundamentally, there is nothing inherently wrong with waivers. Indeed, federal courts routinely allow criminal defendants to waive any number of constitutional rights, including the right to counsel, the right to a jury trial, and the right to appeal. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). However, while a person may waive rights guaranteed by the Constitution or provided by statute, the United States Supreme Court has long held that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights' and do not presume acquiescence in the loss of such rights." Johnson v. Zerbst, 304 U.S. 458, at 464 (1938) (quotation marks, footnotes, and citations omitted); see also United States v. Johnson, 659 F.2d 415, 416 (4th Cir.1981). "In order for a waiver to be valid, it must be shown that the defendant intentionally relinquished a known right." Id. "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" Iowa v. Tovar, 541 U.S. 77, 81 (2004) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

When considering representations made in a waiver, courts interpret the terms of the waiver in accordance with traditional principles of contract law. United States v. Davis, 714 F.3d 809, 814 (4th Cir. 2013); United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). Because immigration waiver provisions are drafted by the government and implicate an immigrant's constitutional rights, courts hold the government to a "greater degree of responsibility" for any ambiguities in the waiver than it would even the drafter of a contract. United States v. Yooho Weon, 722 F.3d 583, 588 (4th Cir. 2013).

In reviewing the waiver at issue here, the court has first considered the waiver in light of the statute which authorized the use of waivers in removal proceedings. First, the court finds that Congress has authorized the use of waivers for the purpose of expediting the removal of aliens. Section 1229a(d) of Title 8 authorizes waivers, as follows:

> The Attorney General shall provide by regulation for the entry by an Immigration Judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

8 U.S.C. § 1229a(d). Second, in furtherance of such authorization, ICE has promulgated and adopted regulations which provide, as follows:

> An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent. The stipulated request and required waivers shall be signed on behalf of the government and by the alien and his or her attorney or representative if any....

8 C.F.R. § 1003.25(b).

Against such backdrop, the court has closely reviewed the waiver in this case. The waiver is in both English and Spanish, it details the specific rights defendant is waiving, and then

6

it provides defendant with a clear and unambiguous opportunity to waive those rights. Further, such waiver clearly informs defendant of the consequences of such waiver, which are removal without an opportunity to seek review of such removal. As with any waiver, it must be considered along with the characteristics of the person who executed the waiver. In this case, it appears that defendant, having been in the United States since he was five years old, had culturally assimilated to the United States as letters from his family attest. The court takes notice that while waiver of constitutional rights is not an everyday part of the American experience, executing waivers is as there is hardly an upgrade to or download of an app, participation in an athletic event, or attendance at a school fieldtrip that does not require a waiver, as ours is a litigious society. Further, it is undisputed that defendant had completed and attained a high school diploma and taken college level courses while previously incarcerated.

When the language of the waiver is considered alongside the characteristics and educational achievement of this defendant, this court is convinced that defendant's waiver was valid. The waiver specifically references the rights he was waiving, including the right to assistance of free counsel, the right to be heard by an immigration judge, the right to examine and question the government's evidence that supported removal, to present his own evidence and witnesses, the right to hold the government to its burden of proving that he was removable, the right to have the IJ explore with him any possible relief that was available, and the right to appeal. See Govt. Ex 4. (#16-4). Finally, such review reveals that defendant represented in such waiver that "I can unequivocally state that I have submitted this 'Stipulated Request' voluntarily, knowingly, and intelligently." Govt. Ex. 4 at ¶ 12.

In applying the heightened scrutiny courts have applied to waiver of constitutional rights since Johnson v. Zerbst, supra, the court has also considered contractual principles, including the

fundamental principle of "consideration," which asks what, if any, benefit did defendant derive in executing the waiver. See *Williston on Contracts* § 7.21 (Adequacy of consideration) ("[S]o long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant[.]"). The court takes notice that such waivers not only expedite matters for the government, they also expedite what is reputed to be a lengthy removal process when it is contested. Thus, by executing a waiver, a person the government is seeking to remove minimizes the time he or she may spend in detention or in limbo if not in detention as a waiver hastens an alien's return. Thus, such waiver is supported by consideration.

Finally, review of the IJ's "Decision and Order," Govt. Ex 5 (#16-5), clearly shows that the IJ reviewed the waiver and found such to be knowing and voluntary, as follows:

> In his stipulation, respondent states that he understands the consequences of his request and that he has entered his request voluntarily, knowingly, and intelligently. The Court finds the alien's waiver to be voluntary, knowing, and intelligent.

Id. at 1. Defendant appears to take issue with the IJ's failure to bring him into court and make inquiry as to voluntariness of the waiver prior to making such finding. However, the Code of Federal Regulations specifically provides for such *ex parte* review:

> The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent.

8 C.F.R. § 1003.25(b). While such review may well be unsettling to courts versed in criminal procedure, which typically requires a live inquiry by a judicial official, by conforming to the requirements of the regulation, such method of determining voluntariness comports with the law that authorized waiver. See generally Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-428

(1998). Indeed, to hold otherwise would require the Attorney General to bring each person before an IJ prior to removal, defeat the express purpose of Section 1229a(d), which is expediting the removal process.

The court cannot find that the waiver deprived defendant of judicial review; instead, it appears that defendant knowingly, voluntarily, and intelligently waived judicial review in favor of expedited return. By failing to show that his waiver was invalid, defendant's failure to exhaust is not excused under the guidance provided by Ortiz. Thus, defendant's Motion to Dismiss is unavailing.

B.

Defendant next contends under the third step of Section 1326(d) review that his administrative removal was fundamentally unfair because the offense for which he was removed did not, as a matter of law, amount to an aggravated felony.[3] While neither Ortiz nor Section 1326(d) require consideration of the third step where a defendant fails to show exhaustion or an invalid waiver, the court will consider whether removal was fundamentally unfair in an abundance of caution.

As a matter of law, the state conviction upon which defendant was removed is an aggravated felony as it is a crime of violence. In arguing that his offense of conviction does not qualify as a crime of violence, defendant has relied on a definition of "crime of violence" that is used under §2L1.2(iii) of the advisory United States Sentencing Guidelines (hereinafter "Guidelines") for purposes of enhancing the sentence of a person convicted of illegal reentry. It

---

[3] Fundamental unfairness could also be found where the waiver was not knowingly, voluntarily, and intelligently made, or where defendant did not understand the nature of the proceedings. United States v. Mendoza-Lopez, 481 U.S. 828 (1987). As they court has determined voluntariness at the second step, it need not be addressed in the third step.

is the statutory definition of "crime of violence" found in 18 U.S.C. § 16 that is specifically adopted and imported into the Immigration and Nationality. 8 U.S.C. § 1101(a)(43)(F).

A "crime of violence" under Section 16, however, includes crimes involving the use of "physical force against the person *or property* of another …." 18 U.S.C. § 16(a) (emphasis added). Thus, a conviction under N.C.Gen.Stat. § 14-34.1(a) for "Discharging a Weapon in Occupied Property" clearly qualifies under Title 8 as a crime of violence because it is patently within the broader definition of "crime of violence" contemplated by Title 18. The elements of a Chapter 14–34.1(a) offense of discharging a firearm into occupied property are that defendant "(1) willfully and wantonly discharge[ed] (2) a firearm (3) into property [ (i.e. any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure) ](4) while it is occupied." State v. Rambert, 341 N.C. 173, 175 (1995) (citation omitted). Using the categorical approach provided in Begay v. United States, 553 U.S. 137 (2008), defendant's state conviction facially involved the use of physical force against another or, at the very least, conduct that presented a serious potential risk of physical injury to another.

Even if the definition found under Section 2L1.2(iii) of the Guidelines were applicable, defendant's argument would be equally unavailing. The definition of "Crime of Violence" includes offenses that involve "physical force against the person of another." U.S.S.G. § 2L1.2(iii). This court's colleague, Honorable Louise W. Flanagan, United States District Judge for Eastern District of North Carolina, recently addressed whether this issue in the context of sentencing. After an extensive review of case law, Judge Flanagan found that he North Carolina offense of shooting into an occupied vehicle, N.C.Gen.Stat. § 14-34.1(a), was a "crime of violence" under the definition found in Section 2L1.2(iii):

> The court notes, however, that in United States v. Wilkerson, 492 F. App'x 447 (4th Cir.2012), the Fourth Circuit held that "discharge of a firearm into an

10

occupied vehicle, was properly counted as a crime of violence because it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Id. at 449 (quoting U.S. S.G. § 4B 1.2 cmt. n. 1). Both the Career Offender Guideline and U.S.S.G. § 2L1.2 provide that an offense is a crime of violence if is "'has as an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G. § 4B1.2(a)(1); U.S.S.G. § 2L1.2 cmt. n. 1.B.(iii). The reasoning in Wilkerson therefore suggests that a violation of N.C.Gen.Stat. § 14–34.1(a) is a crime of violence for purposes of U.S.S.G. § 2L1.2.

      Based upon the foregoing, the court held that defendant's conviction for discharging a weapon into an occupied property, in violation of N.C.Gen.Stat. § 14–34.1(a), was a conviction for a crime of violence for purposes of U.S. S.G. § 2L 1.2. Accordingly, the court overruled defendant's objection and found application of the sixteen (16) level enhancement for having been previously deported or unlawfully remaining in the United States after a conviction for a crime of violence, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), to be proper.

United States v. Parral-Dominquez, 2014 W.L. 3359331 (E.D.N.C. July 9, 2014). While that decision is not binding on this court - - and the court will hold open the sentencing issue here if defendant is in fact convicted - - it appears to be clear at this point that a violation of N.C.Gen.Stat. §14-34.1(a) would meet either the "crime of violence" definition found in Title 18 or in the narrower Guidelines definition. Thus, it appears that in removing defendant in 2007, the Attorney General properly designated defendant to be an aggravated felon, making his removal anything but fundamentally unfair.

V.

In conclusion, while defendant has argued that he had a meritorious defense to removal, close review of that argument shows that it is without substance. Thus, even if an error was made by the IJ in finding the waiver knowing, voluntary, and intelligent, there simply was no meritorious defense as to which the IJ could have advised defendant. Indeed, as an aggravated felon, defendant was not entitled to even discretionary relief from the Attorney General as a matter of law. Moncrieffe v. Holder, ___ U.S. ___, 133 S.Ct. 1678, 1682 (2013) (holding that the "INA also prohibits the Attorney General from granting discretionary relief from removal to

11

an aggravated felon, no matter how compelling his case."). In the end, it cannot be fundamentally unfair for an IJ not to inform defendant of a defense that did not exist or relief that could not be granted as the law does not require administrative law judges to do useless acts. Consolidated Stores Intern. Corp. v. London Insurance and Reinsurance Market Assoc., 2001 WL 1681139, at *6 (S.D.Oh. Oct. 24, 2001) ("*Lex non cogit ad inutilia*: the law does not require a useless act.").

Unlike the cases defendant cites from other circuits, defendant here can show no possible prejudice as his state conviction under N.C.Gen.Stat. §14-34.1(a) facially meets the "crime of violence" definition found in 18 U.S.C. § 16(a), making such offense an "aggravated felony" that fully supported his removal. Indeed, the Ninth Circuit has held that "[t]o establish prejudice in this context, the defendant must show that it was "plausible" that he would have received some form of relief from removal had his rights not been violated in the removal proceedings." United States v. Gomez, 757 F.3d 885, 898 (9th Cir. 2014). As discussed above, it is not plausible that defendant could have received any form of relief from the Attorney General because his conviction under N.C.Gen.Stat. § 14-34.1(a) is in fact a "crime of violence," which was an aggravated felony that precluded even discretionary relief as a matter of law.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss Pursuant to 8 U.S.C. § 1326(d) (#12) is **DENIED**.

Signed: February 3, 2015

Max O. Cogburn Jr.
United States District Judge